UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | Bankr. No. 15-10120 |
| | ) | Chapter 13 |
| HERMAN EUGENE PAULSON | ) | |
| aka Eugene Paulson | ) | DECISION RE:  DEBTOR'S |
| SSN/ITIN xxx-xx-9472 | ) | MOTION TO REINSTATE |
| | ) | CASE FOLLOWING DISMISSAL |
| Debtor. | ) | |

The matter before the Court is Debtor Herman Eugene Paulson's Motion to Reinstate Case from Judgment of Dismissal Due to Debtor[']s Lack of Response to [United States] Trustee's Motion to Dismiss.  This is a core proceeding under 28 U.S.C. § 157(b)(2).  For the reasons discussed below, Debtor's motion will be denied, and the Order Dismissing Case (doc. 84) entered April 26, 2016 will stand as entered.

I.

Debtor Herman Eugene Paulson ("Debtor") filed a chapter 13 petition in bankruptcy on September 28, 2015 (doc. 1).  Debtor is representing himself.  Debtor timely filed most of his schedules and statements; his wage statements and his plan were late.  Debtor also had some problems getting his plan noticed for a confirmation hearing, but he eventually resolved those problems.

Four objections to Debtor's original plan were filed (docs. 24, 30, 41, 43, 44, and 45).  Debtor filed a response to each objection (docs. 48, 49, 50, and 51).  At a telephonic hearing held December 17, 2015, the Court sustained all four objections and denied confirmation of the plan (doc. 53).  Debtor filed a modified plan on February 2, 2016 (doc. 63).  Four objections to Debtor's modified plan were filed (docs. 65, 66, 68, and 70).  Debtor filed a response to each objection (docs. 72, 73, 74, and 75).

On March 1, 2016, while the objection period on Debtor's modified plan was pending, Debtor commenced an adversary proceeding, Adv. No. 16-1009, against several parties, including Sunflour Railroad, Inc., which had objected to Debtor's original and modified plans.  In this complaint, Debtor took issue with "void judgments

made by courts who were defrauded or without jurisdiction."  The subject judgments were the product of some local government actions and related lawsuits involving Roberts County, South Dakota, the unincorporated town of Victor, South Dakota, and Sunflour Railroad, Inc.  These matters date back several years and affected Debtor, his spouse, and an incorporated business in which they held an interest.  Debtor opined this Court had jurisdiction to scrutinize these state matters under the Commerce Clause of the United States Constitution, 15 U.S.C. ch. 1, §§ 1 and 2, 18 U.S.C. ch. 1, § 4, 18 U.S.C. § 1983,[1] 28 U.S.C. § 157(b)(2)(B), and 42 U.S.C. § 1961.  He argued his bankruptcy case was "definitely caused by illegal behavior by the defendants under color of state law and in concert with a large portion of the South Dakota legal system," and he believes the state court judgments are void due to the state court's lack of jurisdiction and fraud.  Debtor specifically asked this Court–the United States Bankruptcy Court for the District of South Dakota–to determine:

> (1) That the streets in Victor belong to the inhabitants (people) who have maintained them for over a hundred years.
> (2) That the defendants herein named are liable for damages to Paulson's business.
> (3) That the South Dakota Supreme Court said what it meant and meant what it said in SUNFLOUR RAILROAD INC. v. EUGENE PAULSON and HEARTLAND ORGANIC FOODS INC. #22642 (2003 SD 122), and that all judgments in Roberts County 01-138 are void *ab initio* (from the beginning)
> (4) That Eugene Paulson is entitled to a refund of in excess of $12,000.00 that [state court judge] Judge Flemmer confiscated from him, without jurisdiction, plus interest at 10% per annum from date of confiscation until date of repayment.
> (5) That Paulson is also entitled to compensation for the damage done to his business in an amount to be decided by a Jury of his peers times treble damages as provided for by 18 U.S.C. § 1961.

--------

[1]Debtor may have intended to cite 42 U.S.C. § 1983 in paragraph 5 on page "1" of his complaint [third page of the document] instead of 18 U.S.C. § 1983; there is no § 1983 in title 18.  Debtor did cite 42 U.S.C. § 1983 in paragraph 7 on page "1."

In his prayer for relief, Debtor stated:

> Herman Eugene Paulson respectfully requests a judgment, by a Jury of his peers, supported by findings of fact and conclusions of law that would settle the matter of who, under South Dakota law, owns the streets in Victor South Dakota. The major perpetrator of the conspiracy, Thomas Mars [an affiliate of Defendant Sunflour Railroad, Inc.], has apparently decided that Paulson has been right all along as he has built buildings across streets that he claimed were County property when it suited him. The streets he has blocked off have never been accepted by a public body just as Market Street was never accepted by a public body. The facts concerning the issue have been intentionally, maliciously, criminally distorted and misapplied in a totally successful attempt to violate 15 U.S.C Ch 1 § 1-2 resulting in the extreme detriment and the destruction of Paulson's life and business for the unlawful gain of all of the participants in this alleged conspiracy. The alleged judicial decisions that Thomas Mars and his lawyers have relied on were procured by total Fraud on the Court and the Fraud has been ignored by the Courts that made the original decisions as well as South Dakota[']s only superior court. It is impossible to believe that such conduct is a judicial mistake or abuse of discretion. The issues herein are completely entwined with the value or lack of value of the bankruptcy estate and are definitely issues that must be resolved by this court in order for a chapter 13 plan to be formulated and carried out. Paulson also respectfully requests a judgment supported by findings of fact and conclusions of law regarding the fact that all judgments in 01-138 are void as a matter of law. Herman Eugene Paulson is well aware that Judge Nail could do as he pleases, without regard for his oath of office, if he were an actual part of the South Dakota Judicial System as it would unconditionally protect him. Paulson is also well aware, from experience, of **what** he would do if he were a part of that system. Herman Eugene Paulson hereby prays for a true judicial decision, by a Jury of his peers, for treble damages for millions of dollars worth of lost revenue and compensation for hundreds of hours of attorney fees times treble damages, as provided for by 18 U.S.C. § 1961[.]

Several of the defendants have moved to dismiss Debtor's complaint as to the relief sought against them.[2]  Some have also filed motions asking the Court to take

---

[2]The United States Trustee has moved to intervene in the adversary proceeding and to dismiss Debtor's complaint.  His motions are being held in abeyance pending resolution of the defendants' motions to dismiss.

judicial notice of certain matters before other courts. Debtor timely responded to each motion in the adversary proceeding. The various motions in the adversary proceeding are pending.

The confirmation hearing on Debtor's modified plan was held March 24, 2016. The Court entered oral findings of fact and conclusions of law, sustained each objection, and denied confirmation of Debtor's modified plan (doc. 76).

On March 30, 2016, the United States Trustee moved to dismiss Debtor's case (doc. 78). He essentially argued Debtor was still proposing plans and making the same arguments that had resulted in this Court's denying confirmation of three plans Debtor had filed in an earlier chapter 13 case, Bankr. No. 11-10169 (D.S.D.) and that had resulted in the earlier case being dismissed. The United States Trustee also noted Debtor had requested in his prior case that this Court reverse or revise the earlier state court judgments, a request that was similar to Debtor's pending adversary proceeding in his present case.

Debtor did not timely file a response to the United States Trustee's motion to dismiss. The Court dismissed the case on April 26, 2016 (doc. 84). Debtor filed a late objection to the motion on April 29, 2016 (doc. 87). He challenged the relevancy of the United States Trustee's references to his earlier chapter 13 case. At length, Debtor also again attacked the earlier state court judgments, stating in part (emphasis added):

> The Trustee, or whoever wrote this motion [to dismiss], totally misunderstands the issues in this case and the adversary filed in it. The issue is that Paulson's company built assets on property that the company understood belonged to it. Roberts County unlawfully usurped ownership of the property and forced abandonment of the companies property and ability to continue it's business. Paulson is almost certain that Roberts County, under the urging of Kay Nikolas and most of the rest of the defendants, conspired in the usurpation of Paulson's property for the financial gain of all concerned. The conspirators committed mail fraud, wire fraud and a host of other infractions in their quest. Until the real estate that Paulson's assets set on is returned to it's rightful owner, the Chapter 13 Plan cannot be completed. Just as the co-conspirators planned, the assets are less than worthless with out the stolen

-4-

ownership of the land being corrected. The damages done by the conspirators is really a secondary issue however it certainly has direct bearing on the Debtor[']s estate after all of these years that the crime has continued.

In his objection, Debtor also noted he had unsuccessfully raised the validity of the state court judgments several times before both state and federal trial and appellate courts, including twice before this Court.

On May 4, 2016, Debtor filed a Motion to Reinstate Case from Judgment of Dismissal Due to Debtor[']s Lack of Response to [United States] Trustee's Motion to Dismiss (doc. 88). This is the motion being addressed by this decision. In this motion, Debtor said he failed to realize there was a response date set by the notice attendant to the United States Trustee's motion to dismiss—he thought the Court would set a response date by order, as the Court had with several of the motions in the pending adversary proceeding. Debtor also indicated he had been "overwhelmed" by the number of responses he had needed to file regarding the adversary proceeding motions. In his motion to reinstate, Debtor cited Fed.R.Civ.P. 55(d), though the Court assumes Debtor meant rule 55(c), which incorporates Fed.R.Civ.P. 60(b),[3] and so advised him (doc. 92).[4]

Sunflour Railroad, Inc. and the United States Trustee each responded to Debtor's motion to reinstate. Sunflour Railroad, Inc. argued Debtor's motion to reinstate did not meet the requirements of rule 60(b) because Debtor had not set forth a meritorious defense to the United States Trustee's motion to dismiss (doc. 90).

---

[3]With his motion to reinstate, Debtor filed a motion to reduce notice (doc. 89). The Court denied that motion to reduce notice, noting Debtor's motion to reinstate was equitable in nature and did not require a notice period (doc. 92). Several days later, Debtor filed and served a Notice of Motion to Reinstate Bankruptcy Case Dated May 16, 2016, with the date apparently referencing the date of his notice, not the motion (doc. 99). The notice was stricken by separate order since notice of Debtor's motion to reinstate was not required (doc. 100).

[4]Debtor has not filed anything indicating the Court's assumption regarding the rule cite was incorrect.

Sunflour Railroad, Inc. also said it would be prejudiced by the reinstatement of Debtor's bankruptcy case because Sunflour Railroad, Inc. had already set a state court hearing regarding execution on its judgment and because interest continued to accrue on the taxes against the real property subject to its judgment lien. The United States Trustee stated he had no objection to the dismissal order being vacated so his motion to dismiss could be decided after the receipt of evidence, but he noted Debtor's motion to reinstate did not comport with applicable legal standards for it to be granted (doc. 93). The United States Trustee also took issue with Debtor's characterization of the United States Trustee's actions in the case and related adversary proceeding as "trickery."

Debtor filed a response to Sunflour Railroad, Inc.'s response on May 13, 2016 (doc. 98). Therein, Debtor stated:

> All that Paulson [referring to himself] is trying to do is get a legitimate Judge to look at the Law and Facts of the case that resulted in Sunflour's alleged judgment and explain why the Law did not apply in that case or rule it void as Paulson believes it is.

Debtor also argued whether he had a meritorious defense to the United States Trustee's motion to dismiss is not a relevant consideration regarding his motion to reinstate. Finally, Debtor acknowledged Sunflour Railroad, Inc.'s judgment became a judgment lien under state law but said he has never found any bankruptcy law that classifies a lien as a secured claim.

II.

Federal Rule of Bankruptcy Procedure 7055 incorporates Federal Rule of Civil Procedure 55. As is applicable here, rule 55(c) provides:

> The court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b).

Federal Rule of Civil Procedure 60(b) has several subsections and provides:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

Though Debtor did not identify the subsection in rule 60(b) on which he was relying, the language of his motion indicates he is arguing his failure to timely file a response to the United States Trustee's motion to dismiss was due to mistake or excusable neglect, as provided by subsection (1).

When a party seeks relief from an order or judgment pursuant to Fed.R.Civ.P. 60(b)(1), this Court must consider four factors from *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 395 (1993): (1) the danger of prejudice to the non-moving party; (2) the length of the delay and its potential impact on judicial proceedings; (3) whether the movant acted in good faith; and (4) the reason for the delay, including whether the reason for the delay was within the movant's reasonable control. *Pioneer Inv. Serv.*, 507 U.S. at 395, *quoted in U.S. Commodity Futures Trading Comm'n v. Kratville*, 796 F.3d 873, 896 (8th Cir. 2015). The key *Pioneer Investment Services* factor is the reason for the delay. *Kratville*, 796 F.3d at 896 (citing *Lowry v. McDonnell Douglas Corp.,* 211 F.3d 457, 463 (8th Cir. 2000)). However, the Court must equitably consider all relevant circumstances, *Pioneer Inv. Serv*., 507 U.S. at 395, and a decision on the merits of a matter is generally preferred over a disposition by default. *See, e.g., Freeman v. Wyeth*, 764 F.3d 806, 810 (8th Cir. 2014).

Further, when a motion under rule 60(b)(1) is presented in this circuit, the Court must also consider whether the party seeking relief from a default order or judgment has a meritorious defense to present, though late. *Union Pac. R. Co. v. Progress Rail Servs. Corp.*, 256 F.3d 781, 783 (8th Cir. 2001) (citing *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 784 (8th Cir. 1998), *cited in Stephenson v. El-Batrawi*, 524 F.3d 907, 912 (8th Cir. 2008), *cited in Vucurevich v. First Midwest Bank*, No. CIV. 14-4064-KES, 2015 WL 632101, at *2 (D.S.D. Feb. 13, 2015)).

> With respect to the meritorious defense factor, "[t]he underlying concern is to determine whether there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default." WRIGHT & MILLER, § 2697. Thus, the court's inquiry is whether a party's "proffered evidence 'would permit a finding for the defaulting party[.]'" *Johnson*, 140 F.3d at 785 (quoting *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 812 (4th Cir. 1988)). The party in default must provide at least "minimally adequate factual support to illustrate the potential viability of his asserted defenses" for purposes of this factor. *Stephenson v. El–Batrawi*, 524 F.3d 907, 914 (8th Cir. 2008). Thus, "bald allegation[s] … without the support of facts underlying the defense, will not sustain the burden of the defaulting party to show cause why the entry of default should be set aside; the trial court must have before it more than mere allegations that a defense exists." *Id.* (quoting *Fink v. Swisshelm*, 182 F.R.D. 630, 632 (D. Kan. 1998) (alterations in original).

*Vucurevich*, 2015 WL 632101, at *6.

### III.

In considering whether to vacate the order dismissing this case, some of the *Pioneer Investment Services* factors may weigh in Debtor's favor, though not exclusively or definitively. The time between the dismissal of the case and Debtor's motion to reinstate was short, but there could be limited prejudice to other parties if the dismissal order were vacated. Any impact on state court proceedings would appear to be nothing more–or less–than what has already occurred for the last handful of years. Further, neither Debtor's failure to respond to the United States Trustee's motion to dismiss nor his present motion to reinstate, at least when considered procedurally, necessarily appear to exhibit bad faith on Debtor's part: Debtor claims

to have misunderstood the notice process regarding the United States Trustee's motion to dismiss, Debtor missed the response deadline, and Debtor responded reasonably promptly once he realized his error. Though the delay was minimal, it was in Debtor's control. The present record does not show Debtor intentionally or contemptuously failed to timely respond to the dismissal motion.

Where Debtor's motion to reinstate falls short–and falls far short–is Debtor has not shown he holds a meritorious defense to the United States Trustee's motion to dismiss. Guided by the case law cited above, there is no possibility the outcome of the United States Trustee's motion to dismiss, after a full evidentiary hearing, would be contrary to the result already achieved by the default: The case would still be dismissed because Debtor's present case and adversary proceeding are merely a rehash of his earlier dismissed case and related adversary proceedings.

Debtor's adversary proceeding against Peoples State Bank during his earlier chapter 13 case, Adv. No. 11-1023, was dismissed on March 5, 2012 for lack of jurisdiction. This Court held:

> Lower federal courts, such as bankruptcy courts, do not have subject matter jurisdiction over challenges to decisions made by state courts. *Bunch v. Hoffinger Industries, Inc.* (*In re Hoffinger Industries, Inc.*), 329 F.3d 948, 950 (8th Cir. 2003) (citations therein).

>> Put another way, "[the Rooker-Feldman doctrine] precludes a federal action if the relief requested in the federal action would effectively reverse the state court decision or void its holding." *Snider v. City of Excelsior Springs*, 154 F.3d 809, 811 (8th Cir. 1998) (citation therein). The state and federal claims need not be identical. A lower federal court may not consider a claim that is "inextricably intertwined" with a claim addressed by a state court. *Goetzman v. Agribank, FCB* (*In re Goetzman*), 91 F.3d 1173, 1177 (8th Cir. 1996) (citation therein). A federal claim is inextricably intertwined with a state claim "if the federal challenge succeeds only to the extent that the state court wrongly decided the issues before it." *Snider*, 154 F.3d at 811.

>> The doctrine is not without its exceptions, at least in some jurisdictions. *See Singleton v. Fifth Third Bank of Western*

*Ohio* (*In re Singleton*), 230 B.R. 533, 538 (6th Cir. BAP 1999) (collecting cases). However, the Eighth Circuit Court of Appeals has generally been unwilling to create such exceptions. *Fielder v. Credit Acceptance Corp.*, 188 F.3d 1031, 1035-36 (8th Cir.1999). *See Ferren v. Searcy Winnelson Company* (*In re Ferren*), 203 F.3d 559, 560 (8th Cir. 2000) (*per curiam*) (specifically rejecting an exception to *Rooker–Feldman* that would permit a lower federal court to collaterally attack an erroneous state court construction of a bankruptcy discharge that was void *ab initio* under 11 U.S.C. § 524(a)(1)).

*Cawley v. Celeste* (*In re Athens/Alpha Gas Corp.*), 463 B.R. 883 (B.A.P. 8th Cir. 2012).[5]   Thus, a federal bankruptcy court does not have subject matter jurisdiction to second guess or "re-do" decisions a state court has already made. *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005) (Rooker-Feldman doctrine is confined to cases brought by a state-court loser complaining of injuries caused by the state court); *Ferren v. Searcy Winnelson Co.* (*In re Ferren*), 203 F.3d 559, 560 (8th Cir. 2000); *Car Color & Supply, Inc. v. Raffel* (*In re Raffel*), 283 B.R. 746, 748-49 (B.A.P. 8th Cir. 2002) (history and application of *Rooker-Feldman* doctrine).

. . . .

In his brief, Debtor correctly states this Court has "core" jurisdiction to allow or disallow claims and to determine the validity, extent, or priority of liens. However, another court has already made those determinations regarding Bank's claim against Debtor. The state court, in the foreclosure action brought by Bank, entered a judgment that established how much money Debtor owed Bank and set forth what collateral the Bank could take possession of to cover that debt.

---

[5]The Bankruptcy Appellate Panel's opinion in *Cawley v. Celeste* was affirmed by the Court of Appeals for the Eighth Circuit on May 9, 2013. *Cawley v. Celeste* (*In re Athens/Alpha Gas Corp.*), 715 F.3d 230 (8th Cir. 2013). In its opinion, the Court of Appeals focused on the full faith and credit statute, 28 U.S.C. § 1738, rather than first deciding whether the Rooker-Feldman doctrine applied. In its oral findings and conclusions at the December 17, 2015 confirmation hearing held in Debtor's present case, this Court acknowledged as much when it stated it did not have the power to alter the state court judgments obtained by Peoples State Bank and Sunflour Railroad, Inc., whether that issue is viewed under the doctrines of Rooker-Feldman, collateral estoppel, or *res judicata*.

Debtor had various remedies to challenge the state court's judgment, such as a timely motion before the same court or a timely appeal to the South Dakota Supreme Court. Debtor apparently even utilized some of those remedies. However, filing bankruptcy and asking this Court to correct what he believes was an unjust result reached by the state court was not then, and is not now, one of Debtor's available remedies in bankruptcy. Accordingly, this Court must dismiss Debtor's complaint and close this adversary proceeding.

*Herman Eugene Paulson v. Peoples State Bank* (*In re Paulson*), Bankr. No. 11-10169, Adv. No. 11-1023, 2012 WL 709848, at *1-2 (Bankr. D.S.D. Mar. 5, 2012). The Court entered a similar decision dismissing Debtor's earlier adversary complaint against Sunflour Railroad, Inc. *Herman Eugene Paulson v. Sunflour Railroad, Inc., Thomas Z. Mars, and Other John and Jane Does to be Added After Discovery* (*In re Paulson*), Bankr. No. 11-10169, Adv. No. 12-1005, 2012 WL 761260, at *1-2 (Bankr. D.S.D. Mar. 7, 2012).

In its oral findings and conclusions entered March 7, 2012, when Debtor's earlier chapter 13 case was dismissed, the Court emphasized Debtor's continuing failure to redress the problems identified by the Court regarding Debtor's earlier plans, including Debtor's failure to recognize the secured claims filed by Sunflour Railroad, Inc. and Peoples State Bank, and the lack of feasibility of any plan due to Debtor's and his spouse's limited income and already austere expenses.

Debtor appealed the dismissal of Bankr. No. 11-10169. The United States Bankruptcy Appellate Panel for the Eighth Circuit affirmed.

The most contentious issues in this bankruptcy case involve two secured creditors under 11 U.S.C. § 506. Those creditors—the bank and the railroad—each hold pre-petition state court judgments against the debtor. The railroad filed a claim for $24,623.36 based on the judgment plus

post-judgment interest.  The claim is secured by a lien on the debtor's real estate.  The bank filed a claim for $61,804.56 plus post-judgment interest.  That claim is secured by a lien on a variety of personal property belonging to the debtor or his corporation, including vehicles, farm equipment, accounts, inventory, and government payments.  These two claims account for more than half of the total claims in the case.  As the bankruptcy court noted, the debtor filed five plans in which he refused to acknowledge the secured claim of the railroad and disputed the bank's claim but offered to make a lump-sum payment directly to the bank if the bank was able to prove its claim.  This payment would occur "as disposal of the assets of the estate allows."  The provisions for liquidating assets and making payments were ambiguous and indefinite.  Debtor was given the opportunity to correct these deficiencies, but failed or refused to do so in his amended plans.

Section 1307(c) [footnote omitted] of the Bankruptcy Code permits the court, upon request by a party in interest or the United States trustee and after notice and a hearing, to dismiss a case for cause.  While "the filing of one unconfirmable plan, in and of itself, is [not] sufficient cause" to dismiss a case, *Minkes v. LaBarge* (*In re Minkes*), 237 B.R. 476, 478 (8th Cir. BAP 1999), the bankruptcy court here made findings of cause under several of the categories of § 1307(c).

The court expressed great concern about the debtor's inability or refusal to propose a confirmable plan after several attempts and guidance from the court, which created delay and additional expense for other parties in the case.  The issue underlying the court's findings of cause for dismissal due to unreasonable delay and denial of confirmation is the debtor's unwillingness to accept that the bank and the railroad are secured creditors.  Until he could demonstrate that understanding by proposing to treat their secured claims as required by the Bankruptcy Code, the debtor could not obtain confirmation of a plan.  Even if the debtor were to put together a plan that properly provided for these two secured claims, the bankruptcy court considered the debtor's ability to make payments, both to secured and unsecured creditors, and found it wanting.  While the debtor proposed selling property to fund the plan, the court noted, first, that most of the property to be sold was the collateral of the secured creditors and, second, that much of the personal property to be sold had not been listed in the bankruptcy schedules and was not clearly identified in the plan.  The debtor's continued failure to propose a plan that properly treated these two secured creditors resulted in unreasonable delay to the prejudice of all creditors.  The court also took note of the debtor's lack of disposable income, which was part of the

> feasibility consideration.   A plan must be feasible to be confirmed. §
> 1325(a)(6).  Plans that propose payments using funds from unidentified
> and uncertain sources are scrutinized very carefully, and plans that are
> vague about the timing and means of payment are not confirmable.  *In
> re Moffet*, 455 B.R. 718, 723 (Bankr. N.D. Iowa 2011); *Chelsea State
> Bank v. Wagner* (*In re Wagner*), 259 B.R. 694, 700-01 (8th Cir. BAP
> 2001).
>
> After weighing all of those factors, the court in its discretion determined
> that dismissal of the case was in the best interests of the creditors and
> the estate.  Our review of the matter satisfies us that the bankruptcy
> court's findings were supported by the facts of the case.   "If the
> bankruptcy court's conclusions supporting dismissal are supported by the
> facts, there is no abuse of discretion."  *Tolbert v. Fink* (*In re Tolbert*),
> 255 B.R. 214, 216 (8th Cir. BAP 2000).

*Paulson v. Wein* (*In re Paulson*), 477 B.R. 740, 745-46 (B.A.P. 8th Cir. 2012).  Debtor

appealed again.  The United States Court of Appeals for the Eighth Circuit affirmed,

stating:

> We conclude that the Bankruptcy Court did not abuse its discretion in
> dismissing the petition because Paulson's repeated filing of inadequate
> plans of reorganization prejudiced his creditors.  *See* 11 U.S.C. §
> 1307(c)(1) (providing that a court may dismiss a bankruptcy case for
> "unreasonable delay by the debtor that is prejudicial to creditors"); *In re
> Dempsey*, 247 F. App'x 21, 25 (7th Cir. 2007) (unpublished order) ("One
> … well-recognized instance of prejudice [under § 1307(c)(1)] is the
> debtor's protracted inability to demonstrate the feasibility of a plan.");
> *see also Banks v. Vandiver* (*In re Banks*), 267 F.3d 875, 876 (8th Cir.
> 2001) (per curiam) (standard of review).

*Paulson v. Wein* (*In re Paulson*), 524 Fed. Appx. 306, 307 (8th Cir. Aug. 5, 2013).

Little has changed in this, Debtor's second chapter 13 case.  Foremost, the

Court has been unable to confirm two plans in this case because they each had

significant problems that were similar to the problems with Debtor's unconfirmable

plans in Debtor's earlier case.

In the oral findings and conclusions entered during the December 17, 2015

confirmation hearing on Debtor's original plan in this case, the Court ruled Debtor

failed to treat Sunflour Railroad, Inc. and Peoples State Bank as secured claim holders, consistent with their state court judgments, and noted the law still did not give this Court–the United States Bankruptcy Court–jurisdiction to alter those state court judgments.  The Court also noted Debtor's lack of details in his plan regarding a proposed liquidation sale.

In the oral findings and conclusions entered during the March 24, 2016 confirmation hearing on Debtor's modified plan in this case, the Court emphasized Debtor was still "trying to plow the same field" and stated confirmation had to be denied for nearly the identical reasons set forth on the record December 17, 2015 regarding Debtor's original plan in this case and the plans filed in Debtor's earlier case: Debtor's failure to treat Sunflour Railroad, Inc. and Peoples State Bank as secured creditors, Debtor's failure to recognize this Court did not have jurisdiction to review state court judgments affecting Sunflour Railroad, Inc.'s claim, and Debtor's failure to include necessary details regarding a proposed sale of assets.  The Court noted these problems were the same problems with Debtor's plans four years ago, and advised Debtor he was not showing good faith by filing yet another plan with the same problems.  The Court further noted, among other problems that rendered the modified plan unconfirmable, the modified plan failed to provide for full payment of priority claims and the Court did not have jurisdiction to address the ownership of streets in Victor, South Dakota, an erroneous assumption the modified plan made.

That little has changed in Debtor's second case is also demonstrated by Debtor's filing of another adversary proceeding, Adv. No. 16-1009, trying to undo certain state court judgments and orders related to Sunflour Railroad, Inc.'s secured claim.  While Debtor may have cited different federal statutes for the relief sought and while he brought in other co-defendants, the relief Debtor essentially seeks through Adv. No. 16-1009 is the same relief he sought against Sunflour Railroad, Inc. in Adv. No. 12-1005 during his first chapter 13 case:  Debtor wants this Court to overturn or provide redress through damages arising from certain final state court judgments because he believes Sunflour Railroad, Inc. and others committed fraud and

conspired against him and his business.  And once again, Debtor has not shown it is within this Court's limited jurisdiction to alter those state court decisions.

Finally, this Court notes Debtor brought similar issues before the United States District Court for the District of South Dakota over ten years ago.  *Eugene Paulson v. Victor Township, et al.*, Civ. 05-1035, slip op. (D.S.D. Sept. 27, 2005).  The District Court also determined it did not have subject matter jurisdiction.  *Id*.  This Court's jurisdiction is even more limited than the District Court's, as this Court obtains its authority by designation from the District Court.  28 U.S.C. §§ 157 and 1334.  This ten-year battle, waged again and again, is additional evidence of Debtor's lack of good faith regarding his present bankruptcy case and Debtor's inability to be successful were an evidentiary hearing held on Debtor's motion to reinstate.

In sum, Debtor's filing of his second chapter 13 case, with two unconfirmable plans and yet another adversary proceeding challenging state court judgments, offers no evidence Debtor intends to use the chapter 13 bankruptcy process for a fresh financial start.  Were an evidentiary hearing held on the United States Trustee's motion to dismiss, Debtor would be unsuccessful in justifying the continuation of this second case.

An order denying Debtor's motion to reinstate will be entered, and the dismissal order will stand.

Dated:  May 20, 2016.

BY THE COURT:

Charles L. Nail, Jr.
Bankruptcy Judge

**NOTICE OF ENTRY**
**Under Fed.R.Bankr.P. 9022(a)**

**This order/judgment was entered**
**on the date shown above.**

**Frederick M. Entwistle**
**Clerk, U.S. Bankruptcy Court**
**District of South Dakota**